**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\*\*\***

| | |
|---|---|
| MICHAEL J. BOGGAN,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>　　　　　　　　Defendant. | Case No. 2:16-cv-01820-RFB-VCF<br><br>**REPORT & RECOMMENDATION**<br><br>MOTION FOR REVERSAL AND/OR REMAND; MEMORANDUM OF POINTS AND AUTHORITIES (ECF No. 24) |

This matter involves Plaintiff Michael J. Boggan's appeal from Defendant Nancy A. Berryhill's final decision denying Boggan social security benefits from January 15, 2010, to July 19, 2013. Before the Court are Boggan's Motion for Reversal and/or Remand; Memorandum of Points and Authorities (ECF No. 24), Commissioner Berryhill's Cross-Motion to Affirm (ECF No. 26), and Boggan's Reply (ECF No. 29). For the reasons stated below, Boggan's Motion to Remand should be granted, and the Commissioner's Cross-Motion to Affirm should be denied.

## I. Background

This case arises under Title II and Title XVI of the Social Security Act. On May 27, 2010, Plaintiff Michael J. Boggan filed his application for disability insurance benefits, and supplemental

---

[1] Pursuant to Fed. R. Civ. Proc. 25(d), Nancy A. Berryhill as successor to Carolyn W. Colvin, is automatically substituted as Defendant in this matter.

security income under the Social Security Act, 42 U.S.C. §§ 416, 423. *See* Admin. Rec. at 153. Boggan's applications were denied initially and upon reconsideration. *Id*. at 106, 115. On December 8, 2011, Boggan appeared with his attorney of record for a hearing before Administrative Law Judge ("ALJ") Norman Bennett. *Id.* at 146. The ALJ issued an unfavorable decision against Boggan on December 29, 2011, finding that Boggan's medical impairments did not individually, or in combination, meet the requirements for disability as defined by the Social Security Act. *Id*. at 645. That decision was upheld by the Appeals Council on July 20, 2013. *Id*. at 665. On September 23, 2013, Boggan filed a Complaint with the District Court of Nevada seeking judicial review of the ALJ's December 29, 2011 decision. *Id*. at 674. United States District Court Judge Richard F. Boulware II remanded the case for further proceedings on November 21, 2014. *Id*. at 682.

Boggan filed subsequent Title II and Title XVI applications on August 15, 2013. *Id*. at 707. The Social Security Administration awarded Boggan disability benefits effective July 20, 2013 (Boggan's 50th birthday). *Id*. Therefore, Boggan requested a proposed close period of disability for the instant matter for the period from January 15, 2010 through July 19, 2013.

On June 12, 2015, pursuant to the District Court remand order, the Appeals Council vacated the prior decision and remanded the matter for further proceedings. *Id*. at 705. Boggan appeared and testified at a hearing held on February 18, 2016. *Id*. at 569-603. The ALJ issued an unfavorable decision against Boggan on March 31, 2016. *Id*. at 529. Boggan filed a Complaint with the District Court of Nevada seeking judicial review of that decision. *See* ECF No. 8.

## II.  Standard of Review

The Fifth Amendment to the Constitution protects the citizenry from the deprivation of property by the government without due process of the law. *See* U.S. Const. Amend. V.  Applicants for social

security disability benefits have a constitutionally protected property interest in those benefits. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When, as here, the Commissioner of Social Security renders a final decision denying a claimant benefits, the Social Security Act provides the District Court appellate jurisdiction to review the Commissioner's decision. *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The Social Security Act limits the District Court's review of final decisions rendered by the Commissioner of Social Security. *See* 42 U.S.C. § 405(g). The Court must review the Commissioner's decision to determine if (1) the Commissioner has applied the proper legal standards, and (2) the Commissioner's decision was supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court may set aside a decision by the Commissioner denying benefits only if the decision is not supported by substantial evidence, or the decision is based on legal error. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Substantial evidence is defined by the Court as being "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005) (*quoting Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)); *see also Batson*, 359 F.3d 1193. If the evidence is susceptible to more than one interpretation, and the ALJ's decision aligns comports with a reasonable interpretation of the evidence, the Court must uphold the ALJ's decision. *Perales*, 402 U.S. at 401. The Court reviews the administrative record as a whole. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

The matter before the Court is, therefore, not whether the Court would have reached a different conclusion, but whether the Commissioner's decision was based on enough evidence from the record to support the conclusion. *Batson*, 359 F.3d at 1193 (defining "substantial evidence"). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### III. Discussion

The sole issue in this matter is whether the ALJ properly evaluated the severity of Boggan's mental impairments. *See* ECF Nos. 24 at 6; 26 at 1. Boggan alleges in essence that the ALJ's decision was not supported by substantial evidence because the ALJ incorrectly interpreted the mental health records. *See* ECF No. 24 at 9. In particular, Boggan asserts that the ALJ "incorrectly analyzed Mr. Boggan's personality disorder with regards to the impairment's classification as an Axis II diagnosis." ECF Nos. 29 at 3; 24 at 8. Prior to addressing Boggan's argument, the Court first discusses the statutory framework from which Boggan's allegations arise.

**A. The Statutory Framework**

President Franklin D. Roosevelt enacted the Social Security Act of 1935 "to provide for the general welfare." 79 Cong. Rec. 12793 (1935) (excerpt from Conference Report-Social Security H.R. 7260). The Act furthers "the Nation's basic commitment … to foster the dignity and well-being of all persons within its borders," and recognizes that "forces not within the control of the poor contribute to their poverty." *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970). "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 2290, 96 L. Ed. 2d 119 (1987).

The claimant bears the initial burden of establishing that they have a disability within the meaning of the Social Security Act to qualify for disability benefits. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The Social Security Act defines disability as the "inability to engage in any substantially gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Secretary of Social Security "has established a five-step sequential evaluation process for determining whether a person is disabled." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

The five-step process is as follows. First, the claimant must show that he or she is not currently engaged in a substantially gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is, then disability benefits are denied. *Id.* Second, the claimant must prove he or she has a severe medical impairment, or combination of impairments, that "significantly limits his [or her] physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Yuckert*, 482 U.S. at 141. "The ability to do basic work activities is defined as 'abilities and aptitudes to do most jobs.'" *Yuckert*, 482 U.S. at 141. Third, the claimant must be disabled. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d) 416.925, 416.926.

5

Disability is determined in one of two ways. If the claimant can demonstrate that his or her impairment(s) meet or equal a listed impairment in the social security regulations at 20 C.F.R. Part 404, Subpart P, App. 1, the claimant is presumed disabled without considering age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Otherwise, if a claimant's impairment(s) do not meet or equal a listed impairment, a residual functional capacity assessment will be conducted to determine what their physical and mental limitations are in a work setting. *See* 404.1520(e), 416.920(e).

The residual functional capacity assessment ("RFC") is a function-by-function examination of a claimant's ability to perform the physical and mental demands of work-related activities on a "regular and continuing basis" despite limitations from impairments. *See* SSR 96-8p. The standard for "regular and continuing basis" is measured by an eight hour a day, five day a week work schedule. *Id.* The RFC is used to determine "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a). The RFC tests a claimant's physical, mental, and other abilities affected by the claimant's impairments. 20 C.F.R. § 404.1545(b). All relevant medical evidence from the record will be used to determine a claimant's RFC, including evidence of impairments that are not determined to be severe. 20 C.F.R. § 404.1545(a). The totality of all medical and non-medical evidence relating to a claimant's impairment(s) will be assessed to determine the "total limiting effects" of both severe and non-severe impairments. 20 C.F.R. § 404.1545(e).

Once the assessment has concluded, the results will be used to determine what job exertion category the claimant can perform. 20 C.F.R. § 404.1567. There are five job exertion categories: (1) sedentary, (2) light, (3) medium, (4) heavy, and (5) very heavy. *Id.* The RFC, and subsequent job exertion category certification are then used to determine if the claimant satisfies the final two steps of the five-step evaluation process. 20 C.F.R. §§ 404.1545(a)(i), 404.1545(a)(ii).

The fourth step of the process requires the claimant to prove that his impairment(s) prevent him or her from performing the physical and mental demands of his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). The RFC will be used to determine if the claimant can in fact perform their past relevant work, based on what job exertion category that job is classified under. *See* 20 C.F.R. § 404.1545; 20 C.F.R. § 404.1545. A claimant will pass step four only if their RFC limits their job exertion to a category lower than the exertion level required to perform their past relevant work. *Id.*

If the claimant satisfies his or her burden under the previous four steps, the burden then shifts to the Commissioner to prove that the claimant is capable of performing some other substantially gainful work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g); *Yuckert*, 482 U.S. at 145. The claimant's residual functional capacity, age, education, and past work experience, are all factors considered to determine if a claimant is capable of performing some other work in the national economy. *Id.* If the Commissioner proves that a claimant can perform some other suitable work, the claimant is given a chance to rebut by showing he or she is, in fact, unable to perform that work. *Id.*

The social security disability claim process begins with an initial disability determination by a state agency acting under the authority of the Secretary of Social Security. *See* 42 U.S.C. §§ 421(a), 1383b(a); 20 CFR §§ 404.1503, 416.903 (1986); *see also Yuckert*, 482 U.S. at 142. If the state agency denies the claim, the claimant may subsequently appeal the decision through a three-step administrative review process. *Yuckert*, 482 U.S. at 142. First, the state agency will reconsider the claim *de novo*. *See* 20 C.F.R. §§ 404.909(a), 416.1409(a); *see also Yuckert*, 482 U.S. at 142. Second, the claimant will appear for hearing conducted by an administrative law judge within the Bureau of Hearings and Appeals of the Social Security Administration. *See* 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 CFR §§ 404.929, 416.1429, 422.201 et seq. (1986); *see also Yuckert*, 482 U.S. at 142. Third, a

claimant is entitled to seek review by the Appeals Council of the Social Security Administration. *See* 20 CFR §§ 404.967 et seq., 416.1467 et seq. (1986); *see also Yuckert*, 482 U.S. at 142.

Once a claimant exhausts all three administrative remedies, he may seek review in federal district court. *See* 42 U.S.C. 405(g); *see also Yuckert*, 482 U.S. at 142. But the District Court's review of final decisions rendered by the Commissioner of Social Security is limited. *See* 42 U.S.C. § 405(g). The Court must review the Commissioner's decision to determine if (1) the Commissioner has applied the proper legal standards, and (2) the Commissioner's decision was supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

**B.   The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920 and issued an unfavorable decision against Boggan on March 31, 2016. *See* Admin. Rec. at 529. At step one, the ALJ found that Boggan had not engaged in substantial gainful activity since January 15, 2010, the alleged onset date. *Id*. at 534. At step two, the ALJ found that Boggan had the following severe medical impairments for Social Security purposes: degenerative disc disease of the lumbar spine, a history of non-dominant left wrist tendinitis, hypertension, diabetes mellitus type II, and depressive disorder. *Id*. at 534. At step three, the ALJ found that Boggan did not have an impairment, or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 535.

Continuing the process at step three, the ALJ reviewed the evidence within the record and found that Boggan demonstrated the RFC to perform "light" work from January 15, 2010 through July 19, 2013. *Id.* at 537. The ALJ further concluded that:

> [Boggan] could lift and carry no more than ten pounds, frequently, and twenty pounds, occasionally. He could sit for six hours, cumulatively, in

>an eight-hour workday. He could stand and/or walk for six hours, cumulatively, in an eight-hour workday. He could occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl. He was precluded from climbing ladders, ropes, and scaffolds. He could occasionally interact with supervisors, co-workers, and the public.

*Id*.

At step four, the ALJ, relying on the testimony of the Vocational Expert, found that Boggan was unable to perform his past relevant work. *See* Admin. Rec. at 559. At step five, the ALJ relied on the Vocational Expert's testimony finding that jobs existed in significant numbers in the national economy that Boggan could perform based on his age, education, work experience, and RFC during the requested closed period from January 15, 2010 through July 19, 2013. *Id*. 560. Based on these findings, the ALJ found that Boggan was not disabled at step five from January 15, 2010 through July 19, 2013, and denied his application for disability insurance benefits and supplemental security income. *Id*. at 561.

### C.   The ALJ did not Properly Evaluate the Severity of Boggan's Mental Impairments

Boggan disputes the Commissioner's RFC finding for two reasons. First, Boggan alleges that the ALJ incorrectly analyzed Boggan's personality disorder with regards to the impairment's classification as an Axis II diagnosis. *See* ECF No. 24 at 8. As a result, the ALJ failed to fully consider the impact Boggan's mental health has on his condition as a whole. *Id*. Second, Boggan alleges that the only medical expert who provided a medical opinion in this case did not have access to the record as a whole. *Id*. at 7. So, Boggan argues, the ALJ improperly interpreted the medical evidence on his own. *Id*.

In response, the Commissioner argues that substantial evidence supports the ALJ's RFC finding because the ALJ's RFC finding took into account all of Plaintiff's limitations stemming from his mental

9

impairments that had record support. ECF No. 26 at 4. For the reasons discussed below, the Court disagrees.

**1. The ALJ's Flawed Classification and Interpretation of Boggan's Anti-Social Personality Disorder under the Multi-Axial System of Assessment is a Reversible Error.**

Boggan argues that the ALJ misinterpreted the axes as defined by the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV). Specifically, Boggan directs the Court to the ALJ's statement in the Administrative Record that the "[p]ersonality disorder was provisionally assessed on Axis II, but it was never diagnosed on Axis I." Admin. Rec. at 536. According to Boggan, the ALJ then stated that "this fact suggested that the antisocial personality disorder needed to be ruled out via further evaluation." *Id*. at 550. Boggan claims that "the fact that Mr. Boggan's records diagnose personality disorders under Axis II does not mean it needs to be ruled out … It was an Axis II diagnosis because this is the proper Axis under the DSM-IV." The Court agrees.

Under the "Mental Health Treatment" section of the ALJ's RFC assessment in the ALJ's decision, the ALJ states "[t]he staff assessed major depression (single episode, moderate) on Axis I. Antisocial personality disorder was provisionally assessed on Axis II, which suggested that it needed to be ruled out via further evaluation. This condition was never diagnosed on Axis I, *so I did not find it medically determinable therein*." Admin. Rec. at 550 (emphasis added). That statement refers to a Southern Nevada Adult Mental Health Services ("SNAMHS") psychiatric evaluation report dated October 19, 2010. *Id*. at 372. The "Diagnosis" section of that report lists under "AXIS I" "Primary: 296.22 MAJOR DEPRESSIVE DISORDER, SINGLE EPISODE, MODERATE." *Id*. at 373. This confirms the first part of the ALJ's interpretation that "[t]he staff assessed major depression (single episode, moderate) on Axis I." *Id*. at 550. Under "AXIS II," however, the report lists "Primary: 301.7

ANTISOCIAL PERSONALITY DISORDER[.]" *See* Admin Rec. at 374. The report does not indicate that the antisocial personality disorder diagnosis was "provisionally assessed" as the ALJ states. Most important, the ALJ stated that he "did not find [antisocial personality disorder] medically determinable, herein" because it "was never diagnosed on Axis I." *Id*. at 550.

Antisocial personality disorders, however, are diagnosed on Axis II, not Axis I. The *Diagnostic and Statistical Manual of Mental Disorders*, 4th edition ("DSM–IV") sets forth a multiaxial system of assessment, each of which refers to a different domain of information that may help the clinician plan treatment and predict outcome. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 25-35 (4th ed. 1994); *see also* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. text rev. 2000). There are five axes included in the DSM-IV multiaxial classification, each relating to a different aspect of a mental disorder:

> Axis I: This is the top-level diagnosis that usually represents the acute symptoms that need treatment; Axis I diagnoses are the most familiar and widely recognized (e.g., major depressive episode, schizophrenic episode, panic attack). Axis I terms are classified according to V-codes by the medical industry (primarily for billing and insurance purposes).
>
> Axis II: This is the assessment of personality disorders and intellectual disabilities. These disorders are usually life-long problems that first arise in childhood.
>
> Axis III: This is the listing of medical and neurological conditions that may influence a psychiatric problem. For example, diabetes might cause extreme fatigue, which may lead to a depressive episode.
>
> Axis IV: This section identifies recent psychosocial stressors—the death of a loved one, divorce, loss of a job, etc.—that may affect the diagnosis, treatment, and prognosis of mental disorders.
>
> Axis V: This section identifies the patient's level of function on a scale of 0–100, where 100 is the highest level of functioning. Known as the Global Assessment of Functioning ("GAF") Scale, it attempts to quantify a patient's ability to function in daily life.

*See Cantu v. Colvin*, No. 5:13-CV-01621-RMW, 2015 WL 1062101, at *6 n.3 (N.D. Cal. Mar. 10, 2015).

Under the DSM-IV, Axis II is for reporting "antisocial personality disorders." *See* DSM–IV at 26-27. According to the DSM-IV, the listing of personality disorders on a *separate axis* ensures that consideration will be given to the possible presence of personality disorders that might otherwise be overlooked when attention is directed to the usually more florid Axis I disorders. *Id*. Moreover, if an Axis II diagnosis is deferred, pending the gathering of additional information, it must be coded "799.9." *Id*.

With that in mind, the ALJ's analysis that because antisocial personality disorder was never diagnosed on Axis I, he did not find it medically determinable is not correct. The SNAMHS psychiatric evaluation report from October 19, 2010 does not indicate that antisocial personality disorder was "provisionally assessed." Per that report, it was diagnosed on Axis II. And those specific types of disorders, if diagnosed at all, would be listed on Axis II, not Axis I.

If the ALJ's error was harmless, remand is inappropriate. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if the error is "inconsequential to the ultimate no disability determination." *Stout v. Commissioner of Social Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). "[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id.

Ninth Circuit precedent does "not quantify the degree of certainty needed to conclude that an ALJ's error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). "[W]here the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Id*. "In other words, the more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Id*.

In the instant matter, the misinterpretation is not harmless because it is rife throughout the ALJ's RFC assessment analysis which in turn impacts the ALJ's ultimate conclusion. For example, the ALJ, interpreting treatment notes from Boggan's visit with SNAMHS on February 17, 2011, stated the following "Major depression (single episode, moderate) was the only Axis I diagnosis." Admin. Rec. at 551. The ALJ fails to note that the report also lists as a diagnosis under Axis II "301.70 Antisocial Personality Disorder." *Id*. at 443. The ALJ also interpreted the notes from a follow up visit with SNAMHS on September 20, 2011 and stated the following: "Depression and psychosis not otherwise specified (NOS) were listed on Axis I, but antisocial personality disorder was not, as it remained on Axis II as a mere ruling out assessment." *Id*. at 552. The Commissioner's Motion fails to address the specific issues raised by Boggan.[2] *See generally* ECF No. 26. The Court finds that the ALJ's RFC finding—and by extension the ultimate conclusion—was not supported by substantial evidence.

///

///

---

[2] The Court, *sua sponte*, notes that under the "diagnosis" section of a psychiatric evaluation report dated February 29, 2012, it states the following: "Diagnosis – Axis II – 1: 799.9 DIAGNOSIS DEFERRED ON AXIS II, DIAGNOSIS OR CONDITION DEFERRED ON AXIS I." *See* Admin. Rec. at 901-902.

**D.     Remand Is Required**

Under 42 U.S.C. § 405(g), "the court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  It is thus, within the Court's discretion to decide whether to remand a Social Security case back to the Commissioner for further proceedings, or to simply award the Plaintiff benefits.  42 U.S.C. § 405(g); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989).  If the Court finds that remanding a case for further proceedings would serve no useful purpose, the court may exercise this discretion and direct the Commissioner to immediately award a Plaintiff benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595–96 (9th Cir.2004); *Harman v. Apfel*, 211 F.3d 1172, 1179–80 (9th Cir.2000, as amended May 4, 2000), cert. denied, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).

Here, the ALJ did not properly evaluate the severity of Boggan's mental impairments.  In particular, the ALJ incorrectly analyzed Boggan's antisocial personality disorder.  As a result, the ALJ's decision failed to fully consider the impact Boggan's mental health has on his condition as a whole.  The ALJ's failure to properly interpret the medical evidence in his RFC assessment was not harmless, because that mistake was prevalent throughout the ALJ's decision.  Further, the RFC assessment is essential to not only determine what job exertion categories Boggan can perform, but most important, to determine if Boggan satisfies the final two steps of the five-step evaluation process.  The ALJ must reassess his RFC determination based on an interpretation of the medical evidence that fully considers the impact Boggan's mental health has on his condition as a whole.  *See McAllister*, 888 F.2d at 603 ("If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded").

**E.   Conclusion**

The District Court's Judicial Review of the Commissioner's decision to deny benefits is limited. Having reviewed the Administrative Record, and applicable law, the Court finds that the ALJ's decision was not supported by substantial evidence.  Accordingly, the Court recommends that the ALJ's decision be VACATED and the case REMANDED to the ALJ for further proceedings consistent with this order.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that the Boggan's Motion to Remand (ECF No. 24) be GRANTED and the case be remanded for further proceedings consistent with the terms of this report and recommendation.

IT IS FURTHER RECOMMENDED that Commissioner Berryhill's Cross-Motion to Affirm (ECF No. 26) be DENIED.

IT IS SO RECOMMENDED.

DATED this 21st day of April, 2017.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE